6/02/2023 10:39 AM
22CV43249

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| PAUL GALM, personal representative for the Estate of DYLLAN NANOSKI,<br><br>      Plaintiff,<br><br>  v.<br><br>STATE OF OREGON, by and through the Oregon Youth Authority; JOHN MALONE, in his individual capacity; SHANNON MOSHOFSKY in her individual capacity; STACEY VARNER in her individual capacity; GILBERTO DE JESUS-RENTAS, in his individual capacity; DANIEL BERGER, in his official and individual capacity; TARA WILLIAMS in her individual capacity; and LARA DOREGIOS, in her individual capacity.<br><br>      Defendants. | Case No.: 22CV43249<br><br>FIRST AMENDED COMPLAINT<br>(Wrongful Death and Violation of Civil Rights)<br><br>JURY TRIAL DEMANDED<br><br>Not Subject to Mandatory Arbitration<br><br>Prayer Not to Exceed: $9,002,179.00<br><br>Filing Fee: ORS 21.160(1)(d) |

Paul Galm, personal representative of the Estate of Dyllan Nanoski, alleges as follows:

1.

This case is not subject to mandatory arbitration due to the amount of the prayer.

2.

The Oregon Youth Authority ("OYA") is a duly authorized agency of Defendant State of

Oregon that is responsible for the delivery and administration of programs and services to

Page 1 - FIRST AMENDED COMPLAINT

ROSS LAW LLC<br>1207 SW SIXTH AVE<br>PORTLAND, OREGON 97204<br>T: 503.224.1658 · F: 888.499.2575

1  children and young adults to hold youth accountable and provide them with opportunities for

2  reformation through treatment, education, and other guidance.  At all times material OYA

3  employed, or otherwise engaged as agents to provide Dyllan Nanoski treatment, education, and

4  guidance.  These agents included John Malone, who was a juvenile parole and probation officer

5  "JPPO" and his supervisor Tara Williams.

6  3.

7  Defendant John Malone was a JPPO for the State of Oregon and at all times was acting

8  under color of state law and within the course and scope of his employment and had the

9  authority to recommend paroling wards or terminating parole. He is named individually.

10  4.

11  Defendant Tara Williams was a JPPO supervisor for the State of Oregon and at all times

12  material supervised JPPO Malone and had authority to revoke parole and recommend paroling

13  wards from MacLaren and/or terminating parole. At all times she was acting under color of

14  state law and within the course and scope of her employment. She is named individually.

15  5.

16  Defendant Daniel (also known as "DAN") Berger ("Berger") was at all times relevant the

17  Superintendent of MacLaren youth Correctional Facility (MacLaren). Berger's was

18  responsible for the safety of ward's housed at MacLaren and had the authority to approve the

19  parole of wards from MacLaren. Berger is named in his official and individual capacity.

20  6.

21  At all times material, Defendant Shannon Moshofsky was a Qualified Mental Health

22  Provider at MacLaren Youth Correctional Facility and at all times was acting under color of

23  state law and within the course and scope of her employment.

24

Page 2 -FIRST AMENDED COMPLAINT

ROSS LAW LLC
1207 SW SIXTH AVE
PORTLAND, OREGON 97204
T: 503.224.1658 · F: 888.499.2575

7.

Defendant Lara Doregios was a medical or mental health provider at MacLaren Youth Correctional facility and at all times was acting under color of state law and within the course and scope of her employment.  She is being sued in her individual capacity.

8.

Defendant Gilberto De Jesus-Rentas was a medical provider at MacLaren Youth Correctional facility and at all times was acting under color of state law and within the course and scope of his employment.  He is being sued in his individual capacity.

9.

Defendant Stacey Varner was a medical provider at MacLaren Youth Correctional facility and at all times was acting under color of state law and within the course and scope of her employment. She is being sued in her individual capacity.

10.

OYA states while your child is with the Oregon Youth Authority, "We will make sure their needs are met.  This includes medical care, dental care, and mental health care."

11.

OYA operates the MacLaren Youth Correctional Facility "MacLaren" located in Woodburn, Oregon.

12.

At all times material herein, Plaintiff, Paul Galm, was duly appointed, and qualified to act as, the Personal Representative of the Estate of Dyllan Nanoski (DOB January 13, 2001), deceased (hereinafter referred to as "Dyllan").

Page 3 -FIRST AMENDED COMPLAINT

ROSS LAW LLC
1207 SW SIXTH AVE
PORTLAND, OREGON 97204
T: 503.224.1658 · F: 888.499.2575

1                                                                    13.

2          In the early Summer of 2019, the 18-year-old Dyllan was placed in the Oregon State

3    Hospital in order to restore his mental competency to address an OYA parole violation.

4                                                                    14.

5          Dyllan was treated for significant mental health issues while at the Oregon State

6    Hospital.

7                                                                    15.

8          In the Fall or Winter of 2019, Dyllan was released from the State Hospital and sent to

9    MacLaren Youth Facility where he was subjected to a psychological intake assessment.  The

10   assessment noted prior suicide attempts, years of auditory hallucinations that were getting

11   worse.  The State's psychologist "strongly recommended" placement in a locked mental health

12   facility to treat "a serious chronic mental health disability."

13                                                                   16.

14         In or around April of 2020, Dyllan was released from MacLaren to a group home where

15   he violated parole and was sent back to MacLaren Youth Facility.

16                                                                   17.

17         In or around February 2021 Dyllan was released from MacLaren to his mother and

18   father's house in Corvallis Oregon. John Malone was assigned to be his parole officer.

19                                                                   18.

20         Immediately after Dyllan's release to his parent's home Dyllan's mother and father

21   noticed Dyllan exhibiting the unusual behavior of him isolating himself in his room and

22   constantly pacing back and forth while talking to himself.

23                                                                   19.

24

Page 4 -FIRST AMENDED COMPLAINT

ROSS LAW LLC
1207 SW SIXTH AVE
PORTLAND, OREGON 97204
T: 503.224.1658 · F: 888.499.2575

1    In April 2021 Dyllan was still under the supervision of JPPO Malone.  JPPO Malone

2 was informed Dyllan was not receiving mental health services at the time.

3                                    20.

4    In April 2021 Dyllan absconded from Oregon.

5                                    21.

6    On April 13, 2021, Dyllan was apprehended out of the State of Oregon.

7                                    22.

8    On April 21, 2021, the State of Oregon arranged for Dyllan to be flown to Portland,

9 Oregon where he was met by JPPO Malone.

10                                    23.

11    On April 21, 2021, JPPO Malone drove Dyllan from Portland, Oregon to Dyllan's

12 mother and father's home in Corvallis, Oregon and released Dyllan.

13                                    24.

14    Dyllan's parents immediately observed Dyllan exhibiting unusual behavior.  Dyllan

15 informed his parents he had left the state of Oregon to kill himself and that he had a soft-shell

16 crab in his neck that needed to be removed.

17                                    25.

18    Dyllan was taken to a local hospital and noted that he wanted to go to the Oregon State

19 Hospital, but he was informed there was no bed space or any other available options.

20                                    26.

21    On April 27, 2021, Dyllan contacted JPPO Malone to self-report that he had been using

22 narcotics and he feared he might harm himself or his family.  Dyllan called JPPO Malone later

23 that day and informed JPPO Malone he wanted to go to the Oregon State Hospital.

24

Page 5 - FIRST AMENDED COMPLAINT

ROSS LAW LLC
1207 SW SIXTH AVE
PORTLAND, OREGON 97204
T: 503.224.1658 · F: 888.499.2575

27.

On April 27, 2021, JPPO Malone then initiated revoking Dyllan's parole because, "Dyllan is a risk to himself as well as the community. OYA is requesting his parole be revoked back to MacLaren YCF."

28.

On April 28, 2021, Dyllan admitted the parole violation and was sent to MacLaren. MacLaren's staff conducted an assessment and noted that Dyllan's behavior, affect, and mood was normal.  Dyllan noted that he had a mental health crisis and was prescribed various mental health medications, but McLaren staff did not order any medications for him at that time.

29.

On April 28, 2021, Dyllan's mother began to search for in-patient mental health facilities throughout the West Coast that could immediately accept Dyllan.  Ms. Nanoski located an out of state in-patient mental health facility that had space for Dyllan.

30.

On May 5, 2021, Dyllan's mother informed JPPO Malone that she had arranged for Dyllan to enter a residential mental health treatment facility in California.

31.

On May 7, 2021 Dyllan informed a mental health provider he needed to go to the Oregon State Hospital and was hearing voices. Maclaren staff noted Dyllan was pacing back and forth and was "acting strange" and punching himself in the face.  Dylan was then screened by Dr. Gilberto de Jesus-Rentas, MD, who was aware of Dyllan's previous suicide attempts and acute mental health issues. Dr. Jesus-Rentas was also informed that Dyllan was not taking his prescribed medication. Dr. Jesus-Rentas then prescribed Dyllan on Zyprexia.

Page 6 - FIRST AMENDED COMPLAINT

ROSS LAW LLC
1207 SW SIXTH AVE
PORTLAND, OREGON 97204
T: 503.224.1658 · F: 888.499.2575

32.

On or about May 11, 2021 Dyllan sent a HealthCare Request form to OYA noting he needed "Emergency mental health appointment please. I sincerely am sick and need to go to state Hospital."  And that he had the problem for years and has been taking psychological medications. OYA then referred him to a mental health provider.

33.

On May 12, 2021 Dyllan was found pacing back and forth speaking with himself and making odd vocalizations. Dyllan informed Defendant Stacey Varner he was suffering from paranoia, voices, and a great deal of distress. Dylan requested again to go to the Oregon State Hospital and informed her that his symptoms were "bad." Stacey Varner informed him a priority referral would be submitted and Dyllan indicated he was relieved. The priority referral was never submitted.

34.

On May 20, 2021 Dyllan was unable to sleep and constantly disturbed staff and other confined youth with his loud outburst and hitting the walls.

35.

On May 20, 2021 Shannon Moshofsky communicated to the Oregon State Hospital that she believed Dyllan Nanoski would benefit from placement and stabilization at the hospital. She noted that she had not done a referral to OSH and was hoping to get insight on how to begin the process. She also communicated to the Oregon State Hospital that "This young person is decompensating quickly and I am concerned about the continued deterioration of his mental health."

Page 7 - FIRST AMENDED COMPLAINT

ROSS LAW LLC
1207 SW SIXTH AVE
PORTLAND, OREGON 97204
T: 503.224.1658 · F: 888.499.2575

36.

On May 25, 2021 Dyllan was found drawing a religious symbol on the floor in his own blood.

37.

On May 27, 2021, Dr. Jesus Rentas communicated with Dyllan. Dyllan reported ongoing auditory hallucinations and difficulty concentrating and constantly moving, had disorganized thought and speech, his insight was poor, and his judgment was poor.

38.

On June 5, 2021 Dyllan was found with a noose made from a bed-sheet in his room at MacLaren.

39.

Ms. Nanoski and JPPO Malone communicated back and forth regarding having Dyllan released directly from MacLaren to the residential facility. On June 10, 2021, Ms. Nanoski asked JPPO Malone what the status of the release order was, so that Dyllan could be released directly to an out of State in-patient mental health treatment facility. Tara Williams and John Malone were aware of Dyllan's deteriorating mental health. Tara Williams communicated with John Malone that Dyllan must be off of parole to enter into the out of state in-patient facility. John Malone then indicated to Ms. Nanoski that Dyllan had to be off of parole to enter into the out of state in-patient facility or get judicial permission to leave the state to enter the in-patient facility.

40.

On June 14, 2018 Dyllan again informed Defendant Shannon Moshofsky that he desired to be sent to the Oregon State Hospital.

Page 8 - FIRST AMENDED COMPLAINT

ROSS LAW LLC
1207 SW SIXTH AVE
PORTLAND, OREGON 97204
T: 503.224.1658 · F: 888.499.2575

41.

On June 18, 2021, JPPO Malone communicated with Danielle Nanoski to ask her what time she could pick Dyllan up.  Ms. Nanoski asked if Dyllan would still be on Parole if released.  JPPO Malone could not give Ms. Nanoski a direct answer. Ms. Nanoski agreed to pick Dyllan up at MacLaren YCF.

42.

On June 20, 2021 MacLaren drafted a "Summary of Discharge" for Dyllan noting schizophrenia was a current acute condition and that Mental Health follow up was due "as soon as possible."

43.

On June 21, 2021 at 0050 in the morning Dr. Gilberto De Jesus Rentas, MD reviewed Dyllan's chart and noted the June 14, 2021 request for Dyllan to go to the Oregon State Hospital and that his last face to face visit with a psychiatrist was May 27, 2021 where Dyllan refused to discuss his day to day activities and concerns regarding his psychotic symptoms. The May 27, 2021 report noted that Dyllan denied having issues sleeping despite staff contradicting those statements. The records reviewed also revealed that Dyllan was not regularly taking the prescribed lithium that was intended to stabilize and minimize the effects of schizoaffective disorder.  Dr. Jesus Rentas was also aware that Defendant Moshosky reported that Dyllan was responding to internal stimuli, paranoia, and delusional thinking. Dr. Jesus Rentas also observed Dyllan was unable to stay still, constantly pacing, talking or mumbling to himself, intermittent laughs and responding to internal stimuli, had disorganized thought process, poor judgment and poor insight and was positive for auditory hallucinations.  Dr. Jesus Rentas noted there was no

Page 9 -FIRST AMENDED COMPLAINT

ROSS LAW LLC
1207 SW SIXTH AVE
PORTLAND, OREGON 97204
T: 503.224.1658 · F: 888.499.2575

1    improvement since Dyllan's previous appointments and that he was not compliant with

2    psychotropics, had auditory hallucinations and disorganized thoughts.

3                                     44.

4         On June 21, 2021 Defendant Lara Doregios examined Dyllan and permitted him to be

5    discharged to his home without any treatment plan or instructions to Dyllan's caregivers or

6    family.

7                                     45.

8         On June 21, 2021, at around noon, MacLaren released Dyllan.  Dyllan's release packet

9    noted he was released on parole "Home (parents)."  Dyllan's mother picked him up in a vehicle

10   and was not informed of the acute mental health crisis Dyllan had been experiencing while

11   incarcerated at McLaren or provided any specific instructions regarding caring for Dyllan.

12                                    46.

13        During the night of June 21 or early morning hours of June 22, 2021, Dyllan Nanoski

14   went into his parents' garage, hanged himself, and died.

15                                    47.

16        After his death the following notes were found in Dyllan's pocket:

17

18

19

20

21

22

23

24

Page 10 - FIRST AMENDED COMPLAINT

ROSS LAW LLC
1207 SW SIXTH AVE
PORTLAND, OREGON 97204
T: 503.224.1658 · F: 888.499.2575

. Dyllan to Your Self

Hey if released by 2:30 pm on friday slipknot end it so he didnt uphold the deal. And the aliens around earth fucked you over please end it.
If you don't die from suffocation Destroy your brain they control energy. Kill your self. Destroy your brain its fucking Disgusting. The aliens controling the simulation wiped your memories, Your sister Notission and your Brother are in danger its not your fault.

IF you wake up & read this Destroy your brain.

Dyllan it's fucking serious no matter how good it feels Die the night you get out of McLaren everything is gone Gods want to Kill you, with bugs, torture, & radiation

Hang yourself with the extention cord in your garage.

Finish it.

48.

As a result of the actions and inactions of the named defendants and the State of Oregon

through its Oregon Youth Authority and its agents acting in the course and scope of their

Page 11 -FIRST AMENDED COMPLAINT

ROSS LAW LLC
1207 SW SIXTH AVE
PORTLAND, OREGON 97204
T: 503.224.1658 · F: 888.499.2575

1  employment, Dyllan's suicidal ideations and acute mental health crisis, exhibited by his

2  significant auditory hallucinations, his articulations of psycho-physical pain from an unknown

3  cause, and his expression of his desire to harm himself and others, including making a noose

4  from a bed-sheet,  and painting a religious symbol on his floor with blood, Dyllan's suicidal

5  ideations were allowed to continue unabated and untreated in an acute phase, thus causing

6  Dyllan to commit suicide on or about June 21, 2022.

7                                    49.

8      Dyllan's beneficiaries, Ms. Danielle Nanoski, his mother, Mr. Joseph Nanoski, his

9  stepfather, and Mr. Christian Jimenez, his biological father, each of whom make a claim for lost

10  society, have been bereaved of the love, society, and companionship of their son, thus

11  sustaining non-economic damages in the amount of $6,000,000.00.

12                                    50.

13      Dyllan's Estate has suffered the form of funeral benefits in the amount of $2,179.00.

14                                    51.

15      The State of Oregon received timely notices pursuant to ORS 30.275.

16                      **FIRST CLAIM FOR RELIEF-WRONGFUL DEATH**
                              ***Against the state of Oregon***

17                                    52.
       Plaintiff reincorporates and alleges paragraphs 2-51.

18                                    53.

19      The State of Oregon through OYA and its agents was negligent in one or more of the

20  following particulars that were a cause of Dyllan's death by failing to prevent Dyllan's suicide,

21  in one or more of the following particulars:

22      a.      In failing to recognize that Dyllan was dangerous to himself and in need of in-

23              patient psychiatric care and hospitalization prior to his release on June 21, 2022;

24  Page 12 -FIRST AMENDED COMPLAINT

ROSS LAW LLC
1207 SW SIXTH AVE
PORTLAND, OREGON 97204
T: 503.224.1658 · F: 888.499.2575

b.    In disregarding the danger that Dyllan posed to himself on June 21, 2022;

c.    In failing to treat Dyllan with medication or other mental health therapy to allow him to return safely to the community on or about June 21, 2021;

d.    In failing to discharge Dyllan directly to an inpatient mental health facility on June 21, 2021;

e.    In failing to recognize Dyllan was in a mental health crisis immediately prior to his release on June 21, 2021;

f.    In releasing Dyllan on June 21, 2021, without any treatment plan to address his acute mental health crisis;

g.    In releasing Dyllan to his parents care on June 21, 2021, while he was in a mental health crisis;

h.    In failing to inform Dyllan's parents that Dyllan was acutely suicidal and/or his mental health had significantly decompensated prior to his release on or about June 21, 2021;

i.    In failing to inform Dyllan's parents that Dyllan was suffering from a mental health crisis immediately upon his release on June 21, 2021;

j.    In failing to take steps to discover the notes referenced in paragraph 47 prior to Dyllan's June 21, 2021, release;

k.    In failing to appreciate the danger Dyllan's mental health crisis posed on June 21, 2021;

l.    In failing to provide Dyllan one-to-one supervision as defined in OYA policy II-A-3.2 from April 28, 2021 to June 21, 2021.

Page 13 - FIRST AMENDED COMPLAINT

ROSS LAW LLC
1207 SW SIXTH AVE
PORTLAND, OREGON 97204
T: 503.224.1658 · F: 888.499.2575

Notice of Removal
Exhibit 9, Page 13 of 23

m.    In failing to provide Dyllan a face-to-face contact with a mental health

practitioner at least daily while incarcerated at MacLaren YCF from April 28,

2021, to June 21, 2021;

n.    In failing to train employees and agents working from April 28, 2021 to June 21,

2021 at MacLaren YCF to recognize the behaviors and appearance indicators

that require immediate referral to in-patient mental health intervention and care;

o.    In failing to train employees and agents working from April 28, 2021 to June 21,

2021 at MacLaren YCF of the enhanced monitoring and supervision

requirements;

p.    In failing to train employees and agents working from April 28, 2021 to June 21,

2021 at MacLaren YCF of the referral process to obtain an immediate mental

health intervention for a suicidal youth;

q.    In failing to stabilize Dyllan's mental health after May 20, 2021 despite knowing

that he was decompensating quickly.

r.    In failing to transfer Dyllan to the Oregon State Hospital or another Community

Psychiatric Hospital for admission after May 20, 2020.

s.    In failing to conduct an "intake psychological evaluation" within 21 days of

Dyllan's April 28, 2021 arrival.

t.    In failing to recognize the signs and symptoms Dyllan's acute suicidality and

self-harming behavior.

54.

Page 14 - FIRST AMENDED COMPLAINT

ROSS LAW LLC
1207 SW SIXTH AVE
PORTLAND, OREGON 97204
T: 503.224.1658 · F: 888.499.2575

1    As a result of defendant's negligence described in the paragraphs above, Dyllan hanged

2  himself, causing his Estate and beneficiaries to suffer the damages as noted in paragraphs 49

3  and 50.

4                                             55.

5                         **SECOND CLAIM FOR RELIEF**
   **VIOLATION OF 8th and 14th AMENDMENT-DEPRIVATION OF MENTAL HEALTH**
6                                    **SERVICES**
               **(Defendants *Moshofksy, Doregios, Varner, Jesus-Rentas*)**

7                                            56.

8      Plaintiff realleges and incorporates, as though fully set forth herein, all previous

9  paragraphs above.

10                                            57.

11     As an inmate in custody, Dyllan Nanoski was entitled to due process and to be free from

12  cruel and unusual punishment pursuant to the Eighth and Fourteenth Amendments to the United

13  States Constitution. The prohibitions against cruel and unusual punishment apply to youth

14  correctional conditions and specifically mandate the right to timely mental health care.

15                                            58.

16     Despite Dyllan's request to be violated on parole because he reported that he posed a

17  danger to himself and others,  Dyllan's request for medication to stabilize his decompensating

18  mental health, Dyllan's request to be admitted to the State Hospital, and OYA's staff's

19  observations of Dyllan's rapidly decompensating mental health, Defendants Moshofksy,

20  Doregios, Varner, and Dr. Jesus-Rentas denied and continued to deny Dyllan medically

21  necessary care, including in-patient treatment at a mental health facility and/or regular

22  medication management, and/or psycho-therapy to stabilize his rapidly deteriorating mental

23  health.

24
Page 15 -FIRST AMENDED COMPLAINT

ROSS LAW LLC
1207 SW SIXTH AVE
PORTLAND, OREGON 97204
T: 503.224.1658 · F: 888.499.2575

59.

Defendants Moshofksy, Doregios, Varner, and Dr. Jesus-Rentas exhibited deliberate indifference toward Dyllan's serious medical needs in violation of the Eighth Amendment by denying him necessary medical and mental health care, including a complete psychological assessment, in-patient mental health care, psychotropic medication, and/or psycho-therapy because they knew that Dyllan faced a substantial risk of serious harm to his health and disregarded that risk by failing to take reasonable measures to abate the harm.

60.

A reasonable mental health provider in a correctional setting would have recognized the high degree of risk and danger of self-harm and suicide in which Defendants Moshofksy, Doregios, Varner, and/or Dr. Jesus-Rentas's actions and inactions placed Dyllan.

61.

As a direct result of the deliberate indifference of defendants Moshofksy, Doregios, Varner, and/or Dr. Jesus-Rentas's to Dyllan's serious mental health needs, Dyllan died by hanging. Plaintiffs have been denied love, society and companionship of their son and are entitled to compensatory damages in the sum of $3,000,000.00.

62.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF 8th and 14th AMENDMENT**
*Depravation of Continued Mental Health Treatment*
*Against Berger, Malone, and Williams*

63.

Plaintiff realleges and incorporates, as though fully set forth herein, all previous paragraphs above.

64.

Page 16 - FIRST AMENDED COMPLAINT

ROSS LAW LLC
1207 SW SIXTH AVE
PORTLAND, OREGON 97204
T: 503.224.1658 · F: 888.499.2575

1    Dyllan Nanoski had a special relationship with Defendants Berger, Malone, and Williams

2    and due to him being on Parole after his discharge from Maclaren and was entitled to due

3    process and to be free from cruel and unusual punishment pursuant to the Eighth and/or

4    Fourteenth Amendments to the United States Constitution. The prohibitions pursuant to the

5    Eighth and/or Fourteenth Amendments apply medical and mental health care and extend once

6    an inmate or ward is released from confinement.

7                                            65.

8    Despite the facts noted in paragraphs 17-45 above, Defendants Berger, Malone, and

9    Williams approved the release of the acutely mentally ill and suicidal Dyllan without any

10    instructions, warnings regarding his mental health, or any immediate follow up appointments to

11    address Dyllan's deteriorated mental health, and before medication had stabilized his acute

12    mental health issues and suicidal ideations.

13                                            66.

14    Defendants Berger, Malone, and Williams exhibited deliberate indifference toward

15    Dyllan's serious medical needs in violation of the Eighth Amendment by denying him

16    necessary medical and mental health care upon his release from McLaren because they knew

17    that Dyllan faced a substantial risk of serious harm to his health and disregarded that risk by

18    failing to take reasonable or any measures to abate the harm posed by his decompensated

19    mental health and acute psychosis which included self-harm and suicidal behavior.

20                                            67.

21    A reasonable youth probation officer would have recognized the high degree of risk and

22    danger of self-harm and suicide in which Defendants Malone and Williams actions and

23    inactions placed Dyllan. And a reasonable superintendent of a youth correctional facility would

24

Page 17 - FIRST AMENDED COMPLAINT

ROSS LAW LLC
1207 SW SIXTH AVE
PORTLAND, OREGON 97204
T: 503.224.1658 · F: 888.499.2575

1    have recognized the high degree of risk and danger of sale harm and suicide in which

2    Defendant Berger, Malone, and William's actions and inactions placed Dyllan.

3                                            68.

4            As a direct result of the deliberate indifference of Defendants Berger, Malone, and

5    Williams to Dyllan's serious mental health needs, Dyllan died by hanging. Plaintiffs have been

6    denied love, society and companionship of their son and are entitled to compensatory damages

7    as noted in paragraph 61.

8                                            69.

9                        **FOURTH CLAIM FOR RELIEF**
                **VIOLATION OF THE 8TH AND 14th AMENDMENT**
10                   ***Monnell Claims Against Defendant Berger***
                                            70.

11           Plaintiff realleges and incorporates, as though fully set forth herein, all previous

12   paragraphs above.

13                                           71.

14           At all times material Defendant Berger supervised and implemented policy at MacLaren

15   Youth Correctional facility in which Dyllan was incarcerated.  During this time MacLaren

16   lacked adequate mental health staffing, supervision, and protocols to protect inmates at risk of

17   self-harm, decompensating mental health, or suicide.

18                                           72.

19           At all times material Defendant Berger knew of and was deliberately indifferent to a

20   substantial risk that OYA's training and staffing practices created a substantial and immediate

21   risk that the serious mental health needs of youth in their custody would go untreated or

22   addressed and that placed youth in their custody a substantial risk of harm.

23                                           73.

24   Page 18 -FIRST AMENDED COMPLAINT

ROSS LAW LLC
1207 SW SIXTH AVE
PORTLAND, OREGON 97204
T: 503.224.1658 · F: 888.499.2575

The moving forces that resulted in the deprivation of Dyllan's Eighth Amendment and/or Fourteenth Amendment rights were the following policies, customs or practices:

a.  A policy, custom, or practice of using MacLaren correctional facility rather than an in-patient mental health facility to house youth exhibiting acute psychosis and/or suicidal ideations.

b.  A policy, custom, or practice of refusing to refer mental health patients to the Oregon State Hospital and/or community inpatient psychiatric facilities.

c.  A policy, custom or practice of accepting youth into custody without the ability to provide adequate mental health care;

d.  A policy, custom, or practice of not requiring staff responsible for suicide prevention to read or otherwise be specifically informed of medical and mental health information essential to protect the health and safety of youth confined at MacLaren;

e.  A policy, custom, or practice of failing to meet widely accepted community standards of care with regarding to behavior management and suicide prevention services for youth housed at MacLaren.

f.  In failing to have a policy in place to discover suicidal ideations of youth exhibiting severe mental health issues;

g.  In failing to have a policy in place to ensure persons in an acute mental health crisis or psychosis is not released without proper safeguards and oversight in place.

74.

Page 19 -FIRST AMENDED COMPLAINT

ROSS LAW LLC
1207 SW SIXTH AVE
PORTLAND, OREGON 97204
T: 503.224.1658 · F: 888.499.2575

As a direct result of the deliberate indifference of Defendant Berger to Dyllan's serious mental health needs, Dyllan died by hanging. Plaintiffs have been denied love, society and companionship of their son and are entitled to compensatory damages as noted in paragraph 61.

75.

**FIFTH CLAIM FOR RELIEF**
**VIOLATION 14th AMENDMENT**
*State Created Danger Against Malone, Williams, & Berger*

76.

Plaintiff incorporates and alleges the paragraphs noted above.

77.

As a ward of the State, Dyllan had a Fourteenth Amendment right to Due Process to confer governmental aid and that imposed a duty on the state to protect Dyllan.

78.

Despite the facts noted in paragraphs 17-45 above, Defendants Malone, Williams, and Berger recommended and approved the release of the acutely mentally ill and suicidal Dyllan to Dyllan's parent's residence without any instructions, warnings regarding his mental health, or any immediate follow up appointments to address Dyllan's decompensated mental health, and before medication had stabilized his acute mental health issues and suicidal ideations.

79.

Despite the facts noted in paragraphs 17-45 above, Defendants Malone, Williams, and Berger recommended and approved release of Dyllan without any safeguards or oversight in place which placed Dyllan in danger by acting with deliberate indifference to the known and obvious danger of Dyllan's acute mental health needs and suicidal ideations.

80.

Page 20 -FIRST AMENDED COMPLAINT

ROSS LAW LLC
1207 SW SIXTH AVE
PORTLAND, OREGON 97204
T: 503.224.1658 · F: 888.499.2575

1    Defendants Malone and Williams also violated Dyllan's 14th amendment rights by

2    communicating to Dyllan's mother that Dyllan was unable to leave the State to go to an

3    inpatient mental health care facility until the Judge terminated Dyllan's Parole, or Dyllan

4    needed judicial approval to leave the State to enter inpatient treatment. This was contrary to the

5    law and deprived Dyllan of the opportunity to immediately transition to the in-patient facility.

6                                           81.

7    Defendants Malone, Williams, and Berger's actions in the paragraphs noted above in this

8    count created or exposed Dyllan to a danger of suicide and self-harm that he would not have

9    otherwise faced from his acute mental health issues and acute suicidality.

10                                          82.

11    Defendants Malone, and Williams acted with deliberate indifference to Dyllan's acute

12    mental health issues and suicidality by informing Dyllan's family Dyllan could not enter in-

13    patient treatment out of State and failing to take any steps to ensure Dyllan's immediate acute

14    mental health needs were being addressed prior to recommending Dyllan be discharged from

15    MacLaren when there were not adequate mental health safeguards or oversight in place.

16                                          83.

17    As a direct result of the deliberate indifference of Defendants Malone, Williams, and

18    Berger to Dyllan's serious mental health needs, Dyllan died by hanging. Plaintiffs have been

19    denied love, society and companionship of their son and are entitled to compensatory damages

20    as noted in paragraph 61.

21                                          84.

22    Plaintiff is entitled to his attorney fees and costs as a prevailing party pursuant to 42

23    U.S.C. 1988.

24

Page 21 - FIRST AMENDED COMPLAINT

ROSS LAW LLC
1207 SW SIXTH AVE
PORTLAND, OREGON 97204
T: 503.224.1658 · F: 888.499.2575

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

On the FIRST Claim for Relief for Wrongful Death, plaintiff seeks from defendant:

    a.  Non-Economic damages in the amount of $6,000,000.00

    b.  Pecuniary losses to the Estate in the amount of $2,179.00; and

    c.  Costs and disbursements incurred herein.

WHEREFORE, plaintiff prays for judgment as follows:

On the SECOND, THIRD, FOURTH, and FIFTH Claim for Relief for Constitutional Violations

plaintiff seeks from the individually named defendants:

    a.  Non-Economic damages in the amount of $3,000,000.00

    b.  Attorney fees under 42 U.S.C. 1988;

    c.  Costs and disbursements incurred herein.


**DEMAND FOR JURY TRIAL**

Dated:  May 25, 2023

ROSS LAW LLC.

s/ Jeremiah Ross_____
Jeremiah Ross, OSB 105980
Attorney for Plaintiff
Phone: (503) 224-1658
E-mail: ross@rosslawllc.com

Page 22 -FIRST AMENDED COMPLAINT

ROSS LAW LLC
1207 SW SIXTH AVE
PORTLAND, OREGON 97204
T: 503.224.1658 · F: 888.499.2575

1

<u>**CERTIFICATE OF SERVICE**</u>

2

3

4    <u>**Paul Galm v. State of Oregon**</u>
     *Multnomah County Circuit Court Case 22CV43249*

5

6    On the date below I served the forgoing Plaintiff on:

7    ***Of Attorneys for Defendant State of Oregon***
     Todd Marshall OSB No. 112685

8    Department of Justice
     1162 Court Street NE

9    Salem, OR 97301-4096
     Tel (503) 947-4700

10   Fax (503) 947-4791

11   todd.marshall@doj.state.or.us

12   By email and OECI E-File and Serve.

13

14

     Dated  June 12, 2023.
15
                                              ROSS LAW LLC
16
                                      By: /s Jeremiah Ross
17                                        JEREMIAH ROSS, OSB 105980
                                          Attorney for Plaintiff
18                                        ross@rosslawllc.com
                                          clerk@rosslawllc.com
19

20

21

22

23

24

25

26

27

     Page 3 – ORDER PERMITTING AMENDED COMPLAINT

                                                      ROSS LAW LLC
                                                    1207 SW 6TH AVE
                                              PORTLAND, OREGON 97204
                                                   PH: 503.224.1658